**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Onelio RODRIGUEZ, Leopold Planell, Luis Batista, Defendants-Appellants.**

**No. 84–5364.**

United States Court of Appeals, Eleventh Circuit.

Nov. 26, 1985.

Clifford B. Hark, Miami, Fla., for Rodriguez, Panell and Batista.

Joel Robrish, Miami, Fla., for Panell.

Linda Collins-Hertz, Asst. U.S. Atty., Miami, Fla., for U.S.

Before TJOFLAT and HENDERSON, Circuit Judges, and NICHOLS,* Senior Circuit Judge.

TJOFLAT, Circuit Judge:

This appeal involves a challenge to the jury selection process in the Miami Division of the Southern District of Florida. The district court denied appellants' joint motion to dismiss their indictment. We affirm.

## I.

Onelio Rodriguez, Luis Batista, and Leopold Planell were indicted by a grand jury in the Southern District of Florida on January 6, 1984. They were charged with two counts: conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 955c (1982) and possession with intent to distribute marijuana in violation of 21 U.S.C. § 955a(a) (1982) and 18 U.S.C. § 2 (1982). Prior to trial, the defendants moved the court to dismiss the indictment, alleging that the system for choosing grand and petit juries in the Miami Division of the Southern District of Florida violated their right, as guaranteed by the sixth

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. 28 U.S.C. § 1861 (1982) provides, in relevant part: "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." For a discussion of the jury selection process adopted to achieve this goal, see *United States v. Pepe*, 747 F.2d 632, 648 n. 17 (11th Cir.1984).

amendment and the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869 (1982),[1] to be indicted and tried by juries representing a fair cross-section of the community. They argued that the Division's practice of filling the master jury wheel exclusively from voter registration lists without supplementation from other sources resulted in an unconstitutional underrepresentation of blacks and Hispanics, both of which are distinct, cognizable groups.

The district court granted the defendants' motion to consolidate their case with ten other cases raising the same jury selection challenge, for the limited purpose of hearing the motions to dismiss the indictments. The court held an evidentiary hearing and, on March 21, 1984, issued a memorandum opinion and order denying the consolidated motions, concluding that a prima facie case of a fair cross-section violation had not been made. The court found that Hispanics did not constitute a distinct, cognizable group and that, even if the court were to accept the defendants' position that they did, it would "conclude that 'hispanic' underrepresentation on Miami jury venires is not constitutionally significant." The court determined that blacks were unquestionably a cognizable group, but the defendants had not established that the group was unconstitutionally underrepresented in the jury selection process.

Rodriguez, Batista, and Planell waived their right to a jury trial, and each was convicted as charged in the indictment. They now appeal, raising one issue: whether the trial court erred in determining that blacks and Hispanics were not underrepresented in the jury selection process.

A criminal defendant has the right to challenge an indictment on the ground that it fails substantially to comply with the provisions of the Jury Selection and Service Act. 28 U.S.C. § 1867(a), (d) (1982). The standard for determining a violation of the statutory fair cross-section requirement is the same as that applied in assessing a sixth amendment fair cross-section violation. *United States v. Pepe*, 747 F.2d at 648 n. 17 (citing *United States v. Perez-Hernandez*, 672 F.2d 1380 (11th Cir.1982)).

## II.

■ It is firmly established that the sixth amendment guarantees a defendant the right to a jury selected from a venire representing a fair cross-section of the community. *Duren v. Missouri,* 439 U.S. 357, 358–59, 99 S.Ct. 664, 666, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana,* 419 U.S. 522, 530, 95 S.Ct. 692, 697–98, 42 L.Ed.2d 690 (1975). A defendant must demonstrate the following three elements to establish a prima facie violation of the sixth amendment's fair cross-section requirement:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. at 364, 99 S.Ct. at 668. Our review is limited to the second element of *Duren,* whether the representation of blacks and Hispanics was fair and reasonable, because it is dispositive in this instance.[2]

■ Assessing the fairness and reasonableness of a group's representation requires a comparison between the percent- age of the "distinctive group" on the qualified jury wheel and the percentage of the group among the population eligible for jury service in the division. *United States v. Pepe,* 747 F.2d 632, 649 (11th Cir.1984). Although precise mathematical standards are not possible, this circuit has consistently found that a prima facie case of underrepresentation has not been made where the absolute disparity between these percentages does not exceed ten percent. *United States v. Tuttle,* 729 F.2d 1325, 1327 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 968, 83 L.Ed.2d 972 (1985); *United States v. Butler,* 611 F.2d 1066, 1069–70 (5th Cir.), *cert. denied,* 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980);[3] *United States v. Maskeny,* 609 F.2d 183, 190 (5th Cir.), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980).[4]

■ The district court found an absolute disparity of 6.674% between the proportion of blacks eligible for jury service in the population of the Miami Division (18.82%) and the percentage of blacks on the qualified wheel (12.146%).[5] The court did not make a specific finding as to the absolute disparity among Hispanics, but stated that the evidence provided by appellants' expert was credible. This evidence indicated an absolute disparity of 5.52% between the proportion of Hispanics eligible for jury service in the Miami Division (24.45%) and the percentage of Hispanics on the qualified wheel (18.93%).[6] In both instances, the

---

**2.** We therefore need not address the district court's conclusion that Hispanics in the Miami Division are not a "distinctive" group in the community. *See United States v. Esle,* 743 F.2d 1465, 1470 (11th Cir.1984) (per curiam) (moving directly to fair and reasonable representation issue without addressing district court's conclusion that Hispanics are "distinctive").

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**4.** Although the absolute disparity method is not the sole means of establishing unlawful jury discrimination, where small absolute disparities are proven, as in this instance, and the minority group involved exceeds ten percent of the population, which is also the case in this challenge, it is not necessary to consider other statistical methods. *United States v. Butler,* 615 F.2d 685,

686 (5th Cir.1980) (per curiam) (denying petitions for rehearing and rehearing en banc).

**5.** Appellants contend that the absolute disparity is actually 7.58%. They reach this figure by using 19.723% as the proportion of blacks eligible for jury service in the Miami District. The difference between appellants' figures and those found by the district court is not significant to our analysis.

**6.** There are several problems with appellants' proffer of evidence regarding the underrepresentation of Hispanics. The figures were arrived at from census and jury data using Hispanic surnames to isolate those in the group. Hispanic surnames, however, may not accurately represent the group of Hispanics alleged to be distinctive. Appellants' data was confined to United States citizens between the ages of 18 and 69, removing one problem encountered in *United States v. Esle,* 743 F.2d at 1471–74, where there were no reliable statistics from which to derive a count of Hispanics who were citizens

absolute disparity fell well within the limits set by this circuit. Appellants have therefore failed to establish the second element of a prima facie sixth amendment fair cross-section violation. The trial judge committed no error in rejecting appellants' claims, and their convictions are accordingly

AFFIRMED.

between the ages of 18 and 69 and thus eligible for jury service. As in *Esle*, however, appellants made no attempt further to confine the data to those eligible for jury service by eliminating people without an ability to understand the English language.