931 F.2d 894
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tharron Reaf WILSON, and Juan Bass, Defendants-Appellants.
 Nos. 89-4118, 89-4119.
 United States Court of Appeals, Sixth Circuit.
 April 29, 1991.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Convicted of various drug-trafficking and firearms offenses, defendant Tharron Wilson appeals the judgment against him on the ground that the jury venire was not drawn from a fair cross section of the community. With respect to two of the counts on which he was convicted, Mr. Wilson also contends that the evidence was not sufficient to support a verdict of guilty. Co-defendant Juan Bass appeals on ineffective assistance of counsel grounds. Not persuaded by either defendant's arguments, we shall affirm the judgment of the district court.
 
 
 2
 * The evidence introduced at trial showed that on February 21, 1989, undercover detectives of the Columbus, Ohio, Police Department made a controlled purchase of crack cocaine from Tharron Wilson at a house located at 401 Gilbert Avenue in Columbus. Members of a SWAT team entered the house shortly after the purchase was made. Inside the house were Messrs. Wilson and Bass and a third man, Lonnie Keene.
 
 
 3
 The SWAT team found Mr. Wilson lying on the floor with approximately 11.9 grams of crack underneath his body. He had $1,000 in cash in one of his socks, and he had a beeper in his jacket pocket. The police found an additional 18 grams of crack elsewhere in the house.
 
 
 4
 As the police were leaving the house with the defendants in custody, an officer asked if anybody wanted his coat before they went outside. Mr. Bass said he did, indicating that his was a green Boston Celtics jacket draped over a chair. The chair was next to a table on which crack, a gun, and money were found.
 
 
 5
 Two and a half months later, at approximately 1:20 a.m., two Columbus police officers began to follow an automobile after it ran a stop sign. The car was driven by Mr. Wilson, who had been released from custody. As Wilson proceeded down a northbound entrance ramp to Interstate 71, the officers turned on their beacons; Wilson began to accelerate. The officers then activated their siren and gave chase. As Wilson merged onto the interstate, one of the officers saw him throw a brown paper bag outside the passenger-side window. The bag landed on a grassy area to the right of the northbound lanes. The officer also saw Mr. Wilson throw "baggies" and other "baggage" out the window.
 
 
 6
 Mr. Wilson eventually pulled over and was arrested. A search of his car uncovered a beeper, $1,025 in cash, a box of .45 caliber shells, and several loose .45 caliber shells. The area where Mr. Wilson had been seen throwing things was then searched. This search led to the discovery of baggies containing 176.48 grams of crack cocaine and a loaded .45 caliber handgun. There were fingerprints on the gun, but they were not Mr. Wilson's. A brown paper bag, which likewise did not have Mr. Wilson's fingerprints on it, was found at the site five hours later.
 
 
 7
 Lonnie Keene testified that he and Bass worked for Mr. Wilson and that all three of them sold crack at the 401 Gilbert address. Bass, according to Keene, was responsible for answering the door of the crack house, a duty that he was said to have performed with a gun in his hand.
 
 
 8
 The jury returned a guilty verdict against Mr. Wilson on five counts: Count II, conspiring to distribute crack in violation of 21 U.S.C. Sec. 846; Count V, distribution of crack in violation of 21 U.S.C. Sec. 841(a)(1); Count VI, possession of 18 grams of crack with intent to distribute it in violation of 18 U.S.C. Sec. 841(a)(1); Count VIII, possession of 176.48 grams of crack with intent to distribute it in violation of 21 U.S.C. Sec. 841(a)(1); and Count IX, carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). Guilty verdicts were returned against Mr. Bass on Counts II and VI, as well as on Count VII, carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c).
 
 II
 
 9
 Mr. Wilson's first contention is that black people were systematically excluded from jury venire. See Duren v. Missouri, 439 U.S. 357, 364 (1979). The contention fails for two reasons.
 
 
 10
 First, 5.4 percent of the people on the venire from which the jury was chosen were Blacks. Blacks account for between 6 and 7 percent of the citizens of the Southern District of Ohio, so the differential could not have exceeded 1.6 percent. Greater disparities have been held not to constitute Sixth Amendment violations. See Singleton v. Lockhart, 871 F.2d 1395, 1398 (8th Cir.), cert. denied, 110 S.Ct. 207 (1989) (3.6 percent); United States v. Rodriguez, 776 F.2d 1509, 1511-12 (11th Cir.1985) (5.52 and 6.674 percent).
 
 
 11
 Second, Mr. Wilson failed to show that the process through which the district assembles its jury venires is one that systematically excludes Blacks. Wilson's counsel argued before the district court that the use of 1984 voter registration lists to select the venire was unfair in light of the "hypermobility" of black Americans. Counsel conceded, however, that he did not have any evidence to support this claim. Presented with no evidence, the district rejected the "hypermobility" argument; we do the same.
 
 
 12
 We also reject Mr. Wilson's contention that there was insufficient evidence to support his conviction on Counts VIII and IX. The question is whether, viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In the case at bar there was ample evidence to support Mr. Wilson's convictions on the counts in question.
 
 
 13
 Mr. Bass argues that his conviction ought to be reversed because his lawyer failed to submit proof of blacks' hypermobility and did not attempt to suppress Bass' acknowledgement of ownership of the Boston Celtics jacket. To prevail on this ineffective assistance of counsel argument, Mr. Bass would have to show that the lawyer "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that this "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Mr. Bass has not demonstrated that his lawyer's alleged errors prejudiced him. The failure to introduce evidence of hypermobility could not have been prejudicial because the representation of Blacks on the jury venire was not unreasonably disproportional. The failure to try to suppress Bass' statement about the jacket was not prejudicial because Lonnie Keene's testimony was quite sufficient to support the jury's verdict.
 
 
 14
 AFFIRMED.