**UNITED STATES of America, Plaintiff,**

v.

**Rahman NURURDIN, Defendant.**

**Crim. A. No. 92 CR 84.**

United States District Court,
N.D. Illinois.

July 10, 1992.

James A. Shapiro, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

John M. Beal, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL OR JUDGMENT OF ACQUITTAL

BERNARD A. FRIEDMAN, District Judge, Sitting by Designation.

On April 8, 1992, a jury found defendant guilty of being a felon in possession of a handgun in violation of 18 U.S.C. § 922(g). This matter is presently before the court on defendant's motion for a new trial or a judgment of acquittal pursuant to Fed. R.Crim.P. 29 and 33.

### I. BACKGROUND

Defendant was arrested on October 9, 1991, on 67th Place between Blackstone and Dorchester Avenues in the Woodlawn neighborhood of Chicago, Illinois. While riding a bicycle southbound from 66th Place, defendant passed an unmarked police car with two uniformed officers inside. The officers called to defendant, but he continued riding, turning westbound against traffic onto 67th Place. The officers turned their car around and pursued defendant.

While defendant was riding on 67th Place, he set off a car alarm. Defendant testified that he pushed off of the car, while the officers testified that the alarm was set off when he threw down a handgun that bounced off of the hood of the car.

The officers arrested defendant, who stopped approximately 150 feet from Dorchester Avenue. A second pair of officers secured defendant while the other officers went back to the car with the alarm still sounding. At the base of a tree next to the car, the officers found a gun.

Defendant testified that he was wearing a Starter brand jacket with pockets so small he had to make a fist in order to fit his hands into them, and that it would be impossible for him to hold a gun in the pocket. Defendant further testified that the jacket was not returned to him after he turned it over to Cook County Jail personnel.

Don Kim, owner of the store where defendant bought the Starter jacket, testified that all of the jackets he sold had a sports team logo. Defendant testified that his jacket had no team logo. Burton Bradley, the vice-president of the Starter company, brought a sample jacket with him to court. The government demonstrated that the handgun fit in the jacket with the smallest pockets.

Defendant has moved for a new trial or for judgment of acquittal on the grounds that he has been deprived of his right to an impartial jury, the court's denial of juror challenges for cause was improper, certain evidence should not have been admitted, and the government failed to prove defendant guilty beyond a reasonable doubt.

## II. DISCUSSION

### A. Racial Composition of the Jury and Panel

Defendant, who is African–American, asserts that he has been deprived of his right to be tried by an impartial jury. This contention is based on the fact that the 40–member jury panel contained only two African–Americans. Defendant has submitted statistics showing that certain communities within the Northern District of Illinois are 14.9% African–American,[1] and argues that a panel that is only 5% African–American does not represent a fair cross-section of the community.

■ Defendant argues that whites, especially from the suburbs, are incapable of understanding African–American experiences or culture, and that therefore the jury in this case was not fair and impartial. However, the only constitutional requirement is that a jury be fair, not representative. "The Sixth Amendment requirement of a fair cross-section on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)." *Holland v. Illinois*, 493 U.S. 474, 480, 110 S.Ct. 803, 807, 107 L.Ed.2d 905 (1990) (emphasis in original). Defendant does not point to any specific facts to suggest that any of the jurors were not impartial.

■ Defendant also argues that the fair cross-section requirement has been violated because there were only two African–Americans on the panel, and none on the jury.[2] In order to establish a violation of the fair cross-section requirement, defendant must show

(1) that the group alleged to be excluded is a "distinctive" group in the community, (2) that the representation of this group in the venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation must be due to the systematic exclusion of this group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). *See*

---

**1.** The 15 communities shown on defendant's Exhibit A apparently are those in which the jurors and defendant live. The 14.9% figure appears to be a non-weighted average of the African-American population in these communities.

**2.** Although defendant's argument focuses on underrepresentation on the jury panel, he also

argues that African-Americans were underrepresented on the jury. "The Supreme Court has recently stated, however, that a defendant has no sixth amendment right to a petit jury representing a fair cross-section of the community." *United States v. Guy*, 924 F.2d 702, 706 n. 2 (7th Cir.1991), *citing Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).

*also United States v. Guy,* 924 F.2d 702, 705 (7th Cir.1991); *United States v. McAnderson,* 914 F.2d 934, 941 (7th Cir.1990).

As African–Americans are a distinctive group in the community, the first prong of the *Duren* test has been satisfied. *See Davis v. Warden, Joliet Corr'l Facility at Statesville,* 867 F.2d 1003, 1006 (7th Cir. 1989), *cert. denied sub nom. Davis v. O'Leary,* 493 U.S. 920, 110 S.Ct. 285, 107 L.Ed.2d 264 (1989). However, defendant has failed to satisfy *Duren's* second prong regarding fair and reasonable representation. The 9.9% difference between the number of African–Americans on the panel (5%) and in defendant's statistics (14.9%)[3] is insufficient to make out a prima facie showing of underrepresentation under *Duren.* Courts have held that a discrepancy of less than 10% does not constitute unfair representation. *See, e.g., Swain v. Alabama,* 380 U.S. 202, 208–209, 85 S.Ct. 824, 829–30, 13 L.Ed.2d 759 (1965) (discrepancy of 10%, standing alone, does not prove underrepresentation); *United States v. McAnderson,* 914 F.2d at 941 (8% discrepancy found to be *de minimis* ); *United States v. Rodriguez,* 776 F.2d 1509, 1511 (11th Cir.1985) (disparity of less than 10% between eligible jurors and jurors on the qualified jury wheel is not adequate to make out a prima facie showing of underrepresentation). The 9.9% difference in the present case is below the 10% disparity needed to satisfy the second prong of *Duren.*

Nor has defendant satisfied the third prong of the *Duren* test. The Seventh Circuit has held that voter registration lists are an acceptable means of identifying potential jurors. *See, e.g., United*

*States v. Guy,* 924 F.2d at 707; *Davis,* 867 F.2d at 1015; *United States v. Koliboski,* 732 F.2d 1328, 1331 (7th Cir.1984). Defendant has offered no evidence whatsoever to suggest that African–Americans are systematically excluded from the jury pool. "Without a demonstration of such exclusion, a challenge to the venire cannot stand." *McAnderson,* 914 F.2d at 941.

## B. Denial of Challenges for Cause

Defendant next argues that he had to exercise four of his peremptory challenges after the court refused his request to excuse those jurors for cause. The four jurors defendant excused peremptorily all had connections to law enforcement, either by being employed by a law enforcement agency or by being related to someone employed by such an agency. Defendant argues that because he had to exercise peremptory challenges in this way, his chances of having African–American members of the panel placed on the jury were diminished.

A trial court has broad discretion in conducting *voir dire* and "is not required to excuse any juror on the basis of his occupational background so long as the court is able to conclude that the juror would be able to view the evidence with impartiality and to decide the case without bias." *United States v. Maldonado–Rivera,* 922 F.2d 934, 970 (2nd Cir.1990). The court must make this conclusion by inquiring "sufficient[ly] to allow *voir dire* to perform its 'responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate evidence.'" *United States v. McAnderson,* 914 F.2d at 942, *quoting Ro-*

---

**3.** As noted above, the 14.9% figure is derived from population statistics from the jurors' and defendant's communities. However, *Davis* indicates that "community" refers to the area from which all potential jurors are drawn. *Davis,* 867 F.2d at 1010, 1015. In this case, the "community" is the ten county area specified in paragraph 3 of the Jury Plan for the United States District Court for the Northern District of Illinois.

Defendant has failed to provide statistics drawn from the appropriate geographic area (i.e., these 10 counties). Defendant has also

failed to provide statistics showing the percentage of potential qualified jurors within this population who are African–American. Nor has defendant provided any factual support for his assertion that "15 to 20 percent" of the general population of the Northern District of Illinois is African–American. Defendant's Brief, p. 8. Given the complete lack of relevant statistical information, the court doubts that the 9.9% disparity suggested by defendant is accurate, but will nonetheless accept it for purposes of deciding this motion.

*sales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634,. 68 L.Ed.2d 22 (1981).

Jurors with a connection to law enforcement need not be excused as a matter of law. Courts have consistently declined to "establish a *per se* rule excluding any person who has had an association with an investigatory agency." *United States v. LaRouche,* 896 F.2d 815, 830 (4th Cir.1990) (affirming district court's refusal to excuse for cause three veniremen who had ties to law enforcement agencies). *See also Brogdon v. Butler,* 838 F.2d 776, 778 n. 1 (5th Cir.1988) (finding that the trial court acted within its discretion in refusing to excuse a juror for cause on the grounds that she was related to law enforcement officials).

Defendant has not shown that the *voir dire* in this matter failed to identify bias or prejudice on the part of any juror or that the court failed to remove a juror whose impartiality reasonably was subject to question. The court is satisfied that the jurors were capable of discharging their duty without bias or prejudice. Accordingly, the denial of defendant's challenges for cause was proper.

*C. Admission of Defendant's Prior Convictions*

Defendant next argues that the admission of his four prior felony convictions was improper. The court gave a jury instruction limiting the use of the prior convictions to defendant's credibility and not for his inclination to commit the offense with which he was charged.

Under Fed.R.Evid. 609, "evidence that an accused has been convicted of a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." "The determination of whether the probative value of evidence of a prior conviction outweighs its prejudicial effect is committed to the trial court's sound discretion." *See, e.g., Lenard v. Argento,* 699 F.2d 874, 896 (7th Cir.1983). In *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.1976), the court set forth the following factors to guide this determination:

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue.

The defendant's testimony and the credibility issue are both critical to the outcome of this case because defendant and the officers offered conflicting accounts of the events leading to defendant's arrest. Considering the *Mahone* factors, the court is satisfied that evidence of defendant's prior felony convictions was more probative than prejudicial. Furthermore, the court instructed the jury that this evidence could not be used to demonstrate a propensity to commit crime, but only to impeach defendant's testimony. Moreover, because defendant was charged with being a felon in possession of a firearm, evidence of prior felony convictions was properly admitted because it is an element of the offense. Accordingly, the court is satisfied that the decision to admit this evidence was appropriate.

*D. Admission of the Starter Jacket as Evidence*

Defendant further contends that the prosecutor's use of the jacket violated Judge Conlon's order requiring both sides to make evidence available to the other side prior to trial.

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Papia,* 560 F.2d 827, 848 (7th Cir.1977). The prosecution introduced the Starter jacket to rebut defendant's testimony that the pockets of his jacket were too small to hold the gun. As Judge Conlon's order did not apply to rebuttal evidence, admission of the jacket was proper.

*E. Guilty Beyond a Reasonable Doubt*

Finally, defendant argues that because the officers needed seven to nine

seconds to turn the patrol car around, and it took defendant only one to two seconds to arrive at the intersection of 67th Street and Blackstone, it was impossible for the officers to see defendant throw the gun. Defendant asserts that the government therefore has not met its burden of proving him guilty beyond a reasonable doubt.

 In challenging a jury verdict based on the sufficiency of the evidence, a defendant "must shoulder a 'heavy burden.'" *United States v. Davis*, 890 F.2d 1373, 1377 (7th Cir.1989), *quoting United States v. Doerr*, 886 F.2d 944, 968 (7th Cir.1989). A jury verdict may be overturned "only when the trial record contains no evidence, no matter how it is weighed, from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Davis*, 890 F.2d at 1377–78.

Viewing the evidence in the light most favorable to the government, the court believes it was reasonable for the jury to have found the officers' testimony believable and the defendant guilty beyond a reasonable doubt of the offense charged. A discrepancy of a few seconds, when the officers were concentrating on the pursuit of defendant and not a stopwatch, does not render the officers' testimony incredible. Defendant had an opportunity to convince the jury that the events could not have taken place as the officers testified, but failed to do so.

### III. CONCLUSION

Defendant has failed to establish that he received an unfair jury trial or that the verdict was not supported by the evidence. Defendant has also failed to establish that the court erred in denying his challenges for cause, admitting the jacket into evidence, or admitting his prior felony convictions. Accordingly,

IT IS ORDERED that defendant's motion for new trial or for judgment of acquittal is denied.