UNITED STATES of America

v.

Anthony Ferrell HOLSTICK, Mack Cornell Holstick, Lester James Holstick, Rochester Holstick, Jr., Curtis Lewis Holstick, Betty Jean Holstick, Tahara Kishone Beard, and Jeffrey Leon Jones, Defendants.

Cr. No. 94–114–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Dec. 27, 1994.

Redding Pitt, U.S. Atty. and Louis V. Franklin, Sr., Asst. U.S. Atty., Montgomery, AL, for the U.S.

Davis B. Whittelsey, Opelika, AL, Timothy Bledsoe Davis, Paul Chris Sasser, Jr., Richard K. Keith, James R. Cooper, Jr., Bryan K. Horsley, Jeffery C. Duffey, Jennifer Lee Lunt, Montgomery, AL, Robert Gardner Poole, Opelika, AL, Ronald Wayne Russell, and Habib Yazdtchi, Montgomery, AL, for defendants.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Defendants Anthony Ferrell Holstick, Mack Cornell Holstick, Lester James Holstick, Rochester Holstick, Jr., Curtis Lewis Holstick, Betty Jean Holstick, Tahara Kishone Beard, and Jeffrey Leon Jones have been convicted of various criminal offenses, including conspiracy to possess and distribute cocaine and cocaine base, in violation of 21 U.S.C.A. §§ 841(a) and 846. During jury selection, the defendants charged that this court's system for selection of grand and trial juries violated the sixth amendment to the United States Constitution. Based upon evidence presented at hearings held on October 3 and December 8, 1994, the court concludes that the defendants' challenge must be rejected.[1]

---

1. Because Judge Myron H. Thompson presided over the selection of the trial jury, he is hearing the defendants' challenge to the jury selection process. Judge Truman M. Hobbs presided over the trial and heard all other matters in this case.

## I. BACKGROUND

In the United States District Court for the Middle District of Alabama, the process for selecting grand juries and trial juries in criminal cases is, in general, as follows. The clerk of the court compiles a "source list" of all registered voters in the Middle District. From this list, the clerk then randomly selects one in ten names to constitute the "master wheel." Those in the master wheel are sent questionnaires. From the answers to the questionnaires, the clerk compiles another list, the "qualified jury wheel," consisting of those persons who appear qualified for jury service. For each grand jury and criminal term, the clerk randomly selects from the qualified jury wheel a sufficient number of persons to generate the needed number of jurors for the grand jury or criminal term, taking into account that a number of prospective jurors will fail to appear, will be challenged by the parties, or will be excused by the court. The clerk sends out notices to these persons summoning them to appear in court on a set day.

For the defendants' trial on October 3, 1994, 56 persons were summoned for jury service, nine or 16.1% of whom were black. Seven persons failed to appear, and the court excused one more before roll call. After roll call, therefore, 48 persons remained on the list. From this list of 48, twelve more persons were excused, leaving 36 persons, five or 13.9% of whom were black. The defendants and the government had to select their trial jury from these 36 persons. The defendants did not present any evidence on the racial makeup of the grand jury that indicted them.

## II. DISCUSSION

The defendants object to the jury selection process on five overlapping grounds: first, that the grand jury and the jury venire from which their trial jury was selected were not reasonably representative of the percentage of African–Americans in the community; second, that the overall selection process, which allows trial jurors to be chosen from the district as a whole, fails to treat each of the three divisions of the Middle District of Alabama as a separate community; third, that

use of the voter registration list results in systematic exclusion of blacks from grand and trial juries and that drivers' licenses or tax returns would provide a more accurate cross section; fourth, that the questionnaire cards and the determination by the clerk of the court as to which persons are qualified results in systematic exclusion of blacks from grand and trial juries; and, fifth, that, because blacks were listed randomly on the jury venire from which the defendants' trial jury was selected, the venire failed to produce a "mirror image" of the qualified blacks in the overall population.

The first challenge presented is whether the defendants' grand jury and the jury venire from which their trial jury was selected were reasonably representative of the percentage of African–Americans in the community as required by the fair-cross-section requirement of the sixth amendment. A party claiming disproportionate representation of a particular group in a jury selection process must show the following in order to establish a prima facie case: first, that the group alleged to be excluded from venires is a "distinctive" group in the community; second, that the representation of this group in venires from which grand or trial juries are selected is not fair and reasonable in relation to the number of such persons in the community; and, third, that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979); *Cunningham v. Zant*, 928 F.2d 1006, 1013 (11th Cir.1991). Failure on any element of the prima facie case ends a challenge under the sixth amendment. *United States v. Pepe*, 747 F.2d 632, 649 (11th Cir.1984).

The defendants have established the first element: African–Americans are a distinctive group within the community. *Cunningham*, 928 F.2d at 1013. To establish the second element, the Eleventh Circuit Court of Appeals has held that the relevant comparison is the difference between the percentage of the distinctive group among the population eligible for jury service and the percentage of the distinctive group on the qualified wheel. *Pepe*, 747 F.2d at 649; *United States*

*v. Esle,* 743 F.2d 1465, 1479–80 & n. 3 (11th Cir.1984) (Tjoflat, J., concurring). The Eleventh Circuit has consistently required an "absolute disparity" of 10% or greater in order to satisfy the second element. *United States v. Tuttle,* 729 F.2d 1325, 1327 (11th Cir.1984), *cert. denied,* 469 U.S. 1192, 105 S.Ct. 968, 83 L.Ed.2d 972 (1985). Here, the percentage of African–Americans among the population eligible for jury service was 28.6% and the percentage of African–Americans on the qualified wheel, from which the grand jury and the jury venire from which the defendants' trial jury was selected, was 24.8%. The absolute difference would be 3.8%, significantly less than the 10% absolute difference necessary to satisfy the second requirement.

▉▉▉ The defendants argue, however, that they are challenging not only the makeup of the qualified jury wheel but also the makeup of the summoned jury venire from which their trial jury was selected. Relying on *Duren,* the defendants argue that the relevant comparison for this challenge is the difference between the percentage of the distinctive group eligible for jury service and the percentage of the distinctive group on the venire from which their jury was selected. The defendants' argument must fail. The court agrees with the government that the Eleventh Circuit has interpreted *Duren* to mean that the relevant comparison is the difference between the percentage of the distinctive group among the population eligible for jury service and the percentage of the distinctive group on the qualified wheel. *Pepe,* 747 F.2d at 649. The court, however, also agrees with the defendants that the focus of the Eleventh Circuit in cases such as *Pepe* was whether the alleged systematic exclusion resulted from the part of the jury selection process that led to creation of the qualified wheel. If the challenge is to the alleged systematic exclusion of a distinctive group *after* the creation of the qualified wheel—for example, the contention that a distinctive group is being systematically excluded because of the process in which summoned jurors whose names are drawn from the qualified wheel are being excused—then whether the qualified jury wheel sufficiently reflects the percentage of the distinctive group in the overall population eligible for jury service would not necessarily be informative; the focus should instead be on whether the jury venires reflect the percentage of the distinctive group in the overall population eligible for jury service. In *Duren,* for example, the Supreme Court examined the difference between the percentage of the distinctive group in the community eligible for jury service and the percentage of the distinctive group appearing for jury venires.

In *Duren,* however, the defendant established that "a large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year." *Duren,* 439 U.S. at 366, 99 S.Ct. at 669. The depressed representation on the venire in *Duren* was therefore not accidental or a fluke but reflected the true overall representation in jury venires. The defendants here, on the other hand, have merely pointed to two other criminal cases tried in the Middle District of Alabama in 1994 which they claim involved a disparity of greater than 10% between the percentage of blacks on the jury venire and the percentage of eligible blacks in the relevant community.[2] Even assuming that the defendants' statistics concerning these two other criminal cases are correct, this evidence is insufficient to establish that the underrepresentation of blacks is due to their systematic exclusion in the jury-selection process.[3] The defendants have failed to establish a prima facie case as to their first challenge.[4]

2. The defendants' brief filed on November 23, 1994, at 3–4.

3. The defendants' statistics were, in fact, sketchy and inconclusive.

4. The defendants also argue that the relevant measurement in this case is not the "absolute difference" between the two relevant percentages but the "comparative difference" or "percentage difference" between the two relevant percentages. This argument has been rejected by the former Fifth Circuit Court of Appeals. *United States v. Butler,* 611 F.2d 1066, 1069–70 (5th Cir.1980) (other statistical methods not necessary when small absolute disparity shown and minority more than 10% of population); *United States v. Maskeny,* 609 F.2d 183, 190 (5th Cir.) (rejecting comparative disparity and standard deviation analysis), *cert. denied,* 447 U.S. 921, 100 S.Ct.

■ In their second challenge, the defendants claim that they are entitled to a qualified jury wheel drawn from the Eastern Division of the Middle District of Alabama, the division in which all the defendants live, rather than a district-wide jury wheel. The crux of this contention is that the qualified wheel from which their jury venire was drawn should reflect the 32% jury-eligible black population of the Eastern Division instead of the 28.6% jury-eligible black population of the Middle District. It is well-established, however, that defendants are not entitled to a jury drawn from any particular division within a district. *United States v. James*, 528 F.2d 999 (5th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976); *see also United States v. Grisham*, 841 F.Supp. 1138, 1145 (N.D.Ala.1994). Moreover, the difference between the percentage of blacks eligible for service in the Eastern Division (32%) and the percentage of blacks on the qualified wheel (24.8%) is less than the 10% absolute difference necessary to establish a prima facie case. Accordingly, the defendants' claim that they were entitled to a jury venire *drawn from the Eastern Division is* without basis in the sixth amendment.

■ The defendants' third and fourth challenges are that, for the purpose of selecting grand and trial juries, the use of voter registration lists as the sole source of names for the master wheel and the clerk's use of questionnaire cards to qualify jurors violated their rights under the sixth amendment.[5] The court rejects these challenges as well. The maximum potential disparity caused by the combined use of voter registration lists and questionnaires is the disparity in representation of eligible black persons in the general population of the district as a whole and the representation of black persons on the qualified jury wheel drawn from the district. As stated, the data reveal that the qualified wheel includes approximately 24.8% African-Americans. Thus, as further already stated, the disparity in representation of eligible black persons in the general population (28.6%) and representation on the qualified jury wheel (24.8%) is only 3.8%, which is insufficient to establish a prima facie case under the fair-cross-section requirement of the sixth amendment.

■ The defendants' fifth and final challenge is that, because black jurors are listed at random on the jury venire list from which a defendant must strike jurors as they appear in numerical order, black jurors are clustered and spread unevenly and, as a result, the venire list is not a "mirror image" of the actual black eligible population in the community and all defendants do not have an equal number of black jurors from whom to choose. The defendants contend that the court should consciously spread out the names of blacks evenly on the jury list or that the defendants should have been allowed to strike randomly from the jury list as a whole rather than from top to bottom. This court has already addressed a similar challenge to the jury selection process in *United States v. Johnson*, 790 F.Supp. 269 (M.D.Ala.), *aff'd*, 19 F.3d 36 (11th Cir.1994) (table). The defendant in *Johnson* based his challenge in part on the fact that, because black jurors are sometimes clustered and spread unevenly on the jury venire list, all defendants do not have an equal number of black jurors from whom to choose. He asked that the court consciously disperse black jurors in an ordered pattern on the jury venire list so that all criminal defendants could have an equal number of black

3010, 65 L.Ed.2d 1112 (1980). And, of course, the former Fifth Circuit's law is binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

5. The use of voter registration lists is specifically authorized by the Jury Selection and Service Act of 1968, 28 U.S.C.A. § 1863(b)(2). Resort to other sources of names is required only when necessary to foster the policies and protect the rights secured by the Act. *Id*. The defendants offered no evidence to support a conclusion that the use of other sources, such as driver license lists, would better serve sixth amendment concerns. The court is not required to supplement the voter registration lists in the absence of a showing that the exclusive use of such lists substantially adversely impacts the composition of the average jury or that it results in the systematic exclusion of a cognizable group from jury service. *Maskeny*, 609 F.2d at 193.

jurors from whom to choose, irrespective of the order in which the defendants' cases are called for jury selection. *Id.* at 271–72. As this court stated in *Johnson,* the law guarantees a defendant the right to a jury selected from a venire that does not systematically exclude distinct groups in the community. *See United States v. Green,* 742 F.2d 609, 611 (11th Cir.1984); *see also Cunningham,* 928 F.2d at 1013; *United States v. Rodriguez,* 776 F.2d 1509, 1511 (11th Cir.1985). The law does not, however, entitle defendants to a jury of any particular composition. *Green,* 742 F.2d at 611. The fact that, as a result of chance in the selection of a trial jury, a defendant does not reach a black juror or a group of black jurors on the venire list does not violate the sixth amendment. Indeed, the defendants' "suggestion that the court should intentionally single out black jurors, merely because of the color of their skin, in order to ... place them on the jury list in a certain order would offend th[e] principle" behind the sixth amendment—"to rid the [jury selection] process of all race discrimination"—in the "worst way." *Johnson,* 790 F.Supp. at 272. The defendants have failed to state a violation of federal law as to their final challenge.[6]

Accordingly, it is ORDERED that the oral motion challenging the selection process for grand and trial juries, made on October 3, 1994, by defendants Anthony Ferrell Holstick, Mack Cornell Holstick, Lester James Holstick, Rochester Holstick, Jr., Curtis Lewis Holstick, Betty Jean Holstick, Tahara Kishone Beard, and Jeffrey Leon Jones, and the written motion to quash the jury venire panel, filed on November 23, 1994, by defendant Tahara Kishone Beard, are denied.

---

**6.** In their briefs in support of their jury challenges, the defendants note that they also objected to the fact that the wife of a police officer who was involved in the investigation of their case sat on the grand jury that indicted them. Judge Hobbs addressed this issue at trial.